NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 29

No. 21-AP-271

| | |
|---|---|
| Vermont State Auditor, Douglas R. Hoffer | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| OneCare Accountable Care Organization, LLC, d/b/a OneCare Vermont | April Term, 2022 |

Robert A. Mello, J.

Thomas J. Donovan, Jr., Attorney General, and Joshua R. Diamond, Deputy Attorney General, Montpelier, and Andrew C. Boxer of Boxer Blake & Moore PLLC, Springfield, for Plaintiff-Appellant.

Ritchie E. Berger, Shapleigh Smith, Jr. and Anne B. Rosenblum of Dinse P.C., Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll and Waples, JJ., and Grearson, Supr. J. (Ret.), Specially Assigned

¶ 1. **WAPLES, J.** In February 2021, the Vermont State Auditor of Accounts, Douglas Hoffer, filed a complaint alleging that defendant OneCare Accountable Care Organization, LLC, had breached various provisions in its contract with the Department for Vermont Health Access (DVHA) by denying the Auditor's requests for OneCare's employee payroll and benefits records for fiscal years (FY) 2019 and 2020. The civil division granted OneCare's motion to dismiss, concluding that the Auditor lacked contractual or statutory authority to demand the records, and the Auditor appealed. We affirm.

¶ 2.     The Auditor made the following allegations in his complaint. Vermont has adopted a statewide health care delivery and payment system referred to as the All-Payer ACO Model. This model relies on private-sector health-care providers voluntarily working together as part of what is called an Accountable Care Organization (ACO). The goal of the model is to reduce health-care spending and improve patient outcomes.

¶ 3.     OneCare is a Vermont limited-liability company. It is the only ACO in Vermont. It was founded by and includes the University of Vermont Medical Center, Dartmouth-Hitchcock, a dozen other hospitals and more than one hundred additional participating providers. OneCare serves insureds covered by Blue Cross and Blue Shield of Vermont, MVP, and Medicare. It also administers a portion of Vermont's Medicaid program under a contract with DVHA. OneCare's anticipated budget for FY 2020 exceeded $1.2 billion and was estimated to impact approximately 250,000 people.

¶ 4.     OneCare is required to obtain budget approval from the Green Mountain Care Board. The Board reviews OneCare's administrative expenses, including payroll and benefits. OneCare's budget approval filings for FY 2020 showed a significant increase in payroll expenses. In FY 2019, OneCare submitted a budget identifying $8.7 million in salary and benefits. That figure increased to $11.8 million in OneCare's FY 2020 budget.

¶ 5.     In March 2020, the Auditor emailed OneCare requesting an explanation for this increase, as well as documents establishing payroll for FY 2020. OneCare responded that the increase was due to "repatriating positions that were split with the Adirondack ACO in 2019, converting a legal services contract to an employed position, annualizing positions that were scheduled mid-year hires in 2019, and regular annual comp increases for all staff filling vacancies." OneCare did not provide the documents requested by the Auditor. The Auditor believed that the response did not explain inconsistencies with OneCare's prior payroll filings. The Auditor again requested the payroll documents, asserting that he was entitled to the information under OneCare's

contract with DVHA. OneCare's CEO responded that salary information would be submitted to the Board in due course and that outside of those filings, the requested information was exempt from disclosure under the Public Records Act.

¶ 6. The Auditor then filed this breach-of-contract action in the civil division. The Auditor alleged that he was entitled to access OneCare's accounting records, including payroll records, under his statutory authority and the terms of OneCare's contract with DVHA. He asked the court for specific performance in the form of an order directing OneCare to turn over all payroll and benefits records for calendar years 2019 and 2020.

¶ 7. OneCare moved to dismiss the Auditor's complaint pursuant to Vermont Rule of Civil Procedure 12(b)(1) for lack of standing. OneCare argued that the Auditor's powers were limited by statute and that its authority did not extend to an ACO like OneCare. It contended that the OneCare-DVHA contract did not give the Auditor the right to obtain the records. It further argued that DVHA's right to access records under the contract was limited to records pertaining to performance under the agreement, and payroll information did not fall within this category.

¶ 8. The Auditor responded that the contract granted authorized representatives of any state agency access to the accounting and financial records of OneCare to the extent they related to the business done with other public entities under the contract. He argued that accounting records included payroll records. He further argued that the Auditor was an authorized agent of the state, and an intended beneficiary of the contract, because the Auditor is empowered by statute to conduct audits of any "department, institution, [or] agency of the State." See 32 V.S.A. §§ 163, 167(a). Finally, he argued the court should treat OneCare as the functional equivalent of an "agency" that is subject to the Auditor's authority under 32 V.S.A. § 167(a).

¶ 9. After a hearing, the trial court granted OneCare's motion to dismiss. The court concluded that standing was the wrong framework for resolving the issue before it, because OneCare was essentially arguing that the Auditor lacked a legally cognizable claim under the

3

contract and relevant statutes. The court therefore treated OneCare's motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6).[1]  The court found that the OneCare-DVHA contract, which was attached to the complaint, did not define who was an "authorized representative" entitled to demand financial records from OneCare.  However, the Auditor did not appear to be included in that definition because the contract did not state that the Auditor was an authorized representative or otherwise mention the Auditor.  The court concluded that no other source of authority would empower the Auditor to demand the production of documents within the scope of the contract.  It reasoned that the powers of the Auditor were defined and limited by statute, which authorized the Auditor to audit departments, institutions, and agencies of the state. The court concluded that a private entity that contracted with the state did not fall within this definition.  The court declined the Auditor's invitation to apply the functional-equivalency test used by some courts in the public-records context to find that OneCare was effectively a state agency for purposes of 32 V.S.A. § 167(a).  The court reasoned that the case was not a public-records case and furthermore noted that this Court had not adopted the functional-equivalency test in that context.  Because it found no authority for the Auditor to demand the records from OneCare, it granted the motion to dismiss.  This appeal followed.

---

[1] Neither party has challenged the trial court's decision to analyze OneCare's motion under Rule 12(b)(6) instead of 12(b)(1).  The court's approach was within its discretion because the motion and response, while initially focused on standing, also raised the issue of whether the Auditor had a legally cognizable claim, a matter properly considered under 12(b)(6).  See A. Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed. 2022) (noting that "the difference between the two motions is often difficult to discern").  In either case, our standard of review is the same: whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief."  Wool v. Off. of Pro. Regul., 2020 VT 44, ¶ 8, 212 Vt. 305, 236 A.3d 1250 (quotation omitted).  We note that the court could consider the contract language because the full contract was attached to the Auditor's complaint.  See Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 10 n.4, 186 Vt. 605, 987 A.2d 258 (mem.) (explaining "[w]hen the complaint relies upon a document . . . such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." (quotation omitted)).  "Similarly, it is well settled that, in ruling on a Rule 12(b)(6) motion to dismiss, courts may properly consider matters subject to judicial notice, such as statutes and regulations, and matters of public record."  Id.

¶ 10. On appeal, the Auditor argues that the unambiguous language of the OneCare-DVHA contract requires OneCare to produce the requested records to the Auditor. He asserts that as a constitutional officer elected for the purpose of performing governmental audits, he is an "authorized representative or agent of the State" and is an intended third-party beneficiary of the OneCare-DVHA contract. In the alternative, he argues that the term "authorized representative" is ambiguous and that the court erred in dismissing the case instead of permitting discovery into extrinsic evidence regarding the contract's meaning. He further argues that we should treat OneCare as the functional equivalent of a state agency that is subject to the Auditor's authority under 32 V.S.A. § 167(a). As discussed below, we find these claims to be without merit.[2]

¶ 11. We review a decision granting a motion to dismiss without deference to the trial court. Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009. We will affirm dismissal for failure to state a claim only if "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Amiot v. Ames, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997) (quotation omitted). In analyzing a motion to dismiss, "[w]e assume as true all facts as pleaded in the complaint, accept as true all reasonable inferences derived therefrom, and assume as false all contravening assertions in the defendant's pleadings." Birchwood Land Co., 2015 VT 37, ¶ 6.

¶ 12. The Auditor's primary argument on appeal is that the contract between OneCare and DVHA unambiguously gives him the right to access OneCare's accounting records. The Auditor claims that he is an intended third-party beneficiary of the contract because he is the

---

[2] In his appellate brief, the Auditor suggests that his access to OneCare's records is mandated by the federal regulations governing Vermont's administration of Medicaid health-care services as well as Vermont's contract with the Centers for Medicare and Medicaid Services. He also argues that OneCare qualifies as a state "institution" and therefore is subject to his review under 32 V.S.A. § 167. The Auditor failed to raise either of these issues before the trial court and therefore has not preserved them for our review. See Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 20, 178 Vt. 77, 872 A.2d 292 ("[I]ssues raised for the first time on appeal will not be considered by this Court.").

official empowered to carry out audits of state agencies, and the purpose of the quoted provisions is to facilitate financial oversight by the state.

¶ 13. A contract may create obligations to a third party, which the third party may enforce against the promisor. Sutton v. Vt. Reg'l Ctr., 2019 VT 71A, ¶ 64, 212 Vt. 612, 238 A.3d 608; see Restatement (Second) of Contracts § 304 (1981) ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."). However, a third party is not an intended beneficiary of a contract, even if they derive a benefit from the contract, unless the contract language demonstrates that the contracting parties intended to benefit that specific third party. McMurphy v. State, 171 Vt. 9, 18, 757 A.2d 1043, 1050 (2000). To determine whether a third party is an intended beneficiary of a contract, we look to the intent of the parties as expressed in the contractual language. Hemond v. Frontier Commc'ns of Am., Inc., 2015 VT 67, ¶ 20, 199 Vt. 272, 123 A.3d 1176.

¶ 14. "In construing particular provisions of a contract, we must consider them in relation to the contract as a whole in order to give effect to all material parts of the contract and to form a harmonious result." In re Spear, 2014 VT 57, ¶ 14, 196 Vt. 517, 99 A.3d 618 (quotation omitted). If the contractual language is unambiguous, we assume it represents the parties' intent, and we will apply it according to its plain meaning. Southwick v. City of Rutland, 2011 VT 105, ¶ 5, 190 Vt. 324, 30 A.3d 1298. However, if the meaning of a term is unclear, the court may consider extrinsic evidence in construing it. Spear, 2014 VT 57, ¶ 14. "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579, 556 A.2d 81, 84 (1988). Whether a contractual term is ambiguous is a question of law. Id. at 577, 556 A.2d at 83.

¶ 15. In addition, the Auditor contends that two provisions contained in attachments to the OneCare-DVHA contract give him a clear right to access the records in question. The first is

6

in Attachment A, which sets forth the specifications of work to be performed under the contract.

Section 2.7, "Financial Stability and Accounting," states:

> Authorized representatives or agents of the State of Vermont and the federal government shall have access to the Contractor's accounting records and the accounting records of its subcontractors upon reasonable notice and at reasonable times during the performance and/or retention period of the Contract for purposes of review, analysis, inspection, audit and/or reproduction.
>
> Copies of any accounting records pertaining to the Contract shall be made available by Contractor within ten (10) days of receiving a written request from DVHA for specified records. DVHA and other state and federal agencies and their respective authorized representatives or agents shall have access to all accounting and financial records of any individual, partnership, firm or corporation insofar as they relate to transactions with any department, board, commission, institution or other state or federal agency connected with the Contract.

The second provision relied upon by the Auditor is in Attachment C, which contains standard state provisions for contracts and grants. Paragraph 13, "Records Available for Audit," of Attachment C states:

> The Party shall maintain all records pertaining to performance under this agreement. "Records" means any written or recorded information, regardless of physical form or characteristics which is produced or acquired by the Party in the performance of this agreement. Records produced or acquired in a machine readable electronic format shall be maintained in that format. The records described shall be made available at reasonable times during the period of the Agreement and for three years thereafter or for any period required by law for inspection by any authorized representatives of the State or Federal Government. If any litigation, claim, or audit is started before the expiration of the three-year period, the records shall be retained until all litigation, claims or audit findings involving the records have been resolved.

¶ 16. The Auditor argues that he must be an "authorized representative" with the right to access records under the contract because he is the official who carries out audits of the state and its subdivisions. However, the language of the contract does not support his claim. Neither § 2.7 of Attachment A nor ¶ 13 of Attachment C, nor any other provision of the contract, defines who

7

is an "authorized representative" of the state for purposes of accessing OneCare's records. The contract does not provide that the Auditor is an authorized representative, and there is no indication that § 2.7 or ¶ 13 were intended specifically for his benefit. In fact, the contract does not mention the Auditor of Accounts at all. Although the contract requires OneCare to provide records for auditing purposes, it does not indicate who is to carry out these audits. The fact that the Auditor's duties include carrying out audits of state agencies does not automatically mean that he is the "authorized representative" entitled to audit OneCare, a private contractor, merely because it receives state funds. The court therefore properly rejected the Auditor's claim that the unambiguous language of the OneCare-DVHA contract gave him the right to access OneCare's records.

¶ 17. The Auditor alternatively argues that the definition of "authorized representative" is ambiguous, and therefore the court should have permitted discovery into extrinsic evidence of its meaning instead of simply dismissing the case. We agree that the existence of an ambiguity in a contract ordinarily precludes summary dismissal because the proper interpretation becomes a question of fact to be decided by the factfinder. See John A. Russell Corp. v. Bohlig, 170 Vt. 12, 16, 739 A.2d 1212, 1216 (1999); see also Sutton, 2019 VT 71A, ¶ 66 (explaining that if reasonable people could understand contract provisions differently then defendants' subsequent representations about provisions' meaning could be helpful in construing ambiguous language). Here, however, we conclude that dismissal was appropriate. Even if reasonable people could disagree about the intended meaning of the term "authorized representative" as used in the OneCare-DVHA contract, the Auditor's proposed interpretation—that he is such a person—is unreasonable because he lacks constitutional or statutory authority to audit entities that are not part of the state. See Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) ("The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view strains the contract language

beyond its reasonable and ordinary meaning." (quotation and alteration omitted)). The Auditor is therefore not entitled to the relief he seeks. See Birchwood Land Co., 2015 VT 37, ¶ 6 (stating dismissal is appropriate "if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief" (quotation omitted)).

¶ 18. The Vermont Constitution provides for the election of an Auditor of Accounts, see Vt. Const. ch. II, §§ 43, 48, but does not vest that position with any specific powers. The scope of the Auditor's authority is instead defined by the Legislature. State v. Howard, 83 Vt. 6, 17, 74 A. 392, 396 (1909) ("[T]he powers of an auditor are determined by statutory provisions, and the state will not be bound if he exceeds the powers conferred."). Like other executive officials and agencies, the Auditor "possesses only that authority which the Legislature has granted." In re Mathez Act 250 LU Permit, 2018 VT 55, ¶ 13, 207 Vt. 537, 192 A.3d 400; see also In re Hinsdale Farm, 2004 VT 72, ¶ 10, 177 Vt. 115, 858 A.2d 249 ("The Legislature has made it clear that administrative departments may exercise only those powers expressly conferred, and that authority cannot arise through implication." (quotation omitted)).

¶ 19. The Auditor's powers are set forth primarily in chapter 3 of Title 32. Section 163 states that "[i]n addition to any other duties prescribed by law, the Auditor of Accounts shall . . . [a]nnually perform or contract for . . . at his or her discretion, governmental audits . . . of every department, institution, and agency of the State." 32 V.S.A. § 163(1)(C). Section 167(a) states that "[i]t shall be the duty of each officer of each department, institution, and agency of the State or municipality, school supervisory union, school district, or county to provide the records, accounts, books, papers, reports, returns, and such other explanatory information when required by the Auditor of Accounts." Id. § 167(a).

¶ 20. We interpret statutes with the goal of implementing the Legislature's intent as expressed in the plain language of the statute. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. Sections 163 and 167 are clear: the Auditor is empowered to conduct

9

governmental audits of departments, institutions, and agencies <u>of the state</u>. Nothing in these provisions authorizes the Auditor to audit private nongovernmental entities. OneCare is a private company that has contracted with the state to provide certain health-care services. It is not a department, institution, or agency of the state. Under the plain language of §§ 163 and 167, the Auditor does not have the power to audit OneCare. See <u>Wesco, Inc. v. Sorrell</u>, 2004 VT 102, ¶ 14, 177 Vt. 287, 293, 865 A.2d 350 ("If the statute is unambiguous and its words have plain meaning, we accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further.").

¶ 21. Other statutory provisions give the Auditor the power to examine records of specific state agencies, departments, and other entities, such as county sheriff departments, 24 V.S.A. § 290b; the Office of the Defender General, 13 V.S.A. § 5258(a); the Vermont Public Power Supply Authority, 30 V.S.A. § 5038(b); the Vermont Economic Development Authority, 10 V.S.A. § 217(c); the Connecticut River Atlantic Salmon Commission, 10 V.S.A. § 4662; and the Vermont Housing Finance Agency, 10 V.S.A. § 639(b). The Auditor is also empowered to review contracts privatizing services previously provided by state employees, 3 V.S.A. § 343(c)(1), and review financial information submitted by a business participating in the Vermont Employment Growth Incentive Program, 32 V.S.A. § 3341(b). None of these provisions gives the Auditor the right to access the records sought in this case. However, they do demonstrate that the Legislature knows how to provide the authority sought by the Auditor here when it chooses. <u>Town of Milton Bd. of Health v. Brisson</u>, 2016 VT 56, ¶ 24, 202 Vt. 121, 147 A.3d 990 ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority." (quotation omitted)). It has not chosen to do so here.

¶ 22. Notably, the statute providing for financial oversight of ACOs contains no reference to the Auditor. Section 9382(a) of Title 18 requires ACOs to obtain certification from

10

the Green Mountain Care Board, which must ensure that "[t]he ACO's governance, leadership, and management structure is transparent." 18 V.S.A. § 9382(a)(1). The Board is required to adopt rules "for reviewing, modifying, and approving" ACO budgets, including "administrative costs" defined by the Board. 18 V.S.A. § 9382(b)(1)(M). Under the Board's duly promulgated rules, each ACO must annually submit budgets and financial information, including "wage and salary data," to the Board for its review. Oversight of Accountable Care Organizations § 5.403(a)(3), Code of Vt. Rules 80 280 005, http://www.lexisnexis.com/hottopics/codeofvtrules. Section 9382 plainly gives the Board authority to review OneCare's financial records, but it does not mention the Auditor. We presume this omission was intentional. See Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979) ("This Court must presume that all language in a statute was drafted advisedly and that the plain ordinary meaning of the language used was intended." (citation omitted)); see also State v. LeBlanc, 171 Vt. 88, 92, 759 A.2d 991, 993 (2000) (explaining that this Court will not expand statute by implication unless necessary to make statute effective).

¶ 23. The Auditor compares this case to those involving requests for records under the Public Records Act (PRA) and argues that we should apply the functional-equivalency analysis used by some courts in that context to rule that OneCare is effectively a state agency for purposes of 32 V.S.A. § 167. We decline to do so for two reasons. First, the language of the PRA is significantly different than the statutes governing the Auditor's authority. Under the PRA, "[a]ny person may inspect or copy any public record of a public agency." 1 V.S.A. § 316(a). The Act defines "public agency" as "any agency, board, department, commission, committee, branch, instrumentality, or authority of the State or any agency, board, committee, department, branch, instrumentality, commission, or authority of any political subdivision of the State." Id. § 317(a)(2). The purpose of the PRA is to ensure government transparency and accountability to the public, and the Legislature has instructed that its provisions are to be "liberally construed." 1

V.S.A. § 315(a). Consistent with this instruction, we have held that a private entity may be subject to the PRA as an "instrumentality" of the state "where the state contracts with a private entity to discharge the entirety of a fundamental and uniquely governmental obligation owed to its citizens." Hum. Rts. Def. Ctr. v. Correct Care Sols., LLC, 2021 VT 63, ¶ 21, __ Vt. __, 263 A.3d 1260.

¶ 24. The Auditor did not request OneCare's records under the PRA, and he does not contend that the PRA applies here. Rather, the Auditor's claimed authority stems from chapter 3 of Title 32, which allows the Auditor of Accounts to request records from a "department, institution, [or] agency of the State" for the purpose of conducting governmental audits. 32 V.S.A. §§ 163, 167. Unlike the PRA, there is no indication in chapter 3 that the Legislature intended for these terms to be liberally construed to extend the Auditor's oversight to private entities that contract with the state. If the Legislature intended for the Auditor's authority to be broadly construed in this way, it knew how to so provide. LeBlanc, 171 Vt. at 92, 759 A.2d at 993.

¶ 25. Moreover, even in the public-records context, we have rejected a general functional-equivalency test to determine what counts as an "agency," because the PRA adequately defines what an agency is for public-records purposes. Hum. Rts. Def. Ctr., 2021 VT 63, ¶ 13 (explaining that functional-equivalency test was unnecessary because "agency" was sufficiently defined in PRA). As we recently explained in McVeigh v. Vermont School Boards Ass'n,

> [T]here is no general "functional-equivalency" concept contained in the PRA. Although we must construe the PRA liberally in favor of disclosure, 1 V.S.A. § 315(a), we cannot ignore its plain text. The definition of "public agency" in 1 V.S.A. § 317(a)(2) contains no reference to functional equivalents; rather, it sets forth a limited list of traditional, well-established forms in which government chooses to organize itself. To the extent that the Legislature intended for the PRA to apply to a nongovernmental entity, that entity must qualify as one of these forms.

2021 VT 86, ¶ 21, __ Vt. __, 266 A.3d 763 (citation omitted). As McVeigh makes clear, the functional-equivalency test is not an appropriate framework for determining whether an ostensibly private entity qualifies as a "public agency" subject to Vermont's PRA. Generally, the only sub-

definition of "public agency" under the PRA that would be potentially applicable to a private nongovernmental entity that contracts with the state to provide services is "instrumentality." See id. ¶ 22; Hum. Rts. Def. Ctr., 2021 VT 63, ¶ 13. Even if OneCare qualified as an instrumentality under the PRA, a question we need not answer in this case, the statutes setting forth the Auditor's powers do not give him the power to audit instrumentalities. See 32 V.S.A. §§ 163, 167. The analysis we conducted in these PRA cases is therefore inapplicable here.

¶ 26. In sum, neither the OneCare-DVHA contract nor the statutes governing the Auditor's authority give the Auditor the right to access OneCare's accounting records.[3] The trial court therefore properly granted OneCare's motion to dismiss the complaint for failure to state a claim upon which relief could be granted.

Affirmed.

FOR THE COURT:

_____
Associate Justice

---

[3] Because we conclude that the Auditor is not entitled to the records, we need not resolve the question of whether payroll and benefits records are "accounting records."

13