Vermont Superior Court
Filed 04/29/25
Chittenden Unit

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03392

---

Waterloo Real Estate Group, LLC v. Country Home Products, Inc. et al

---

### DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS

In this case, Plaintiff Waterloo Real Estate Group, LLC ("Waterloo") seeks declaratory relief, damages, and attorney's fees arising out of the failure of the HVAC system at a property it leases to Defendant Country Home Products, Inc. ("CHP"). In addition to claims against CHP, Waterloo has asserted claims for breach of contract and negligence against Defendant New England Air Systems, LLC ("New England Air"). New England Air has moved for judgment on the pleadings on those claims. The court grants the motion.

For purposes of this motion, the pleadings establish the following narrative. Waterloo owns the subject property and leases it to CHP. Pursuant to the lease, CHP is responsible for the "maintenance, repairs, and replacements" of the leased space. CHP in turn contracted with New England Air to service, maintain, and repair the HVAC system at the property.[1] Waterloo alleges that New England Air improperly serviced the system, causing the boilers to fail.

In its Opposition, Waterloo acknowledges that it is not a party to the contract between CHP and New England Air. It asserts instead that it is a third-party beneficiary of the contract, and so entitled to recover for its breach. As a general principle, Waterloo's conclusion is uncontroversial; " 'A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.' " *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 64, 212 Vt. 612(quoting Restatement (Second) of Contracts § 304). That conclusion, however, rests on the premise that Waterloo is in fact a third-party beneficiary.

This premise, however, is unsupportable. "[A] third party is not an intended beneficiary of a contract, even if they derive a benefit from the contract, unless the contract language demonstrates that the contracting parties intended to benefit that specific third party." *Vt. State Auditor v. OneCare Accountable Care Org.*, 2022 VT 29, ¶ 13, 216 Vt. 478 (citing *McMurphy v. State*, 171 Vt. 9, 18

Decision on Motion for Judgment on the Pleadings
of **4**
24-CV-03392 Waterloo Real Estate Group, LLC v. Country Home Products, Inc. et al

Page **1**

(2000)); *see also Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶ 64, 212 Vt. 612. Incidental beneficiaries have no enforceable rights against the promisor. *McMurphy*, 171 Vt. 9 at 16 (citing Restatement (Second) of Contracts § 315); *see id*. at 17 (" 'To maintain a suit for breach of contract on a third-party beneficiary theory, plaintiffs must allege . . . 'that the contract was entered into for [their] direct, and not incidental, benefit.' ") (quoting *Estate of Jiggetts v. City of Gastonia*, 497 S.E.2d 287, 291 (N.C. Ct. App. 1998)). To determine whether a party qualifies as an intended beneficiary, the court considers the intention of the original contracting parties by looking at the language of the contract itself. *Sutton*, 2019 VT 71A, ¶ 64 (citing *Hemond v. Frontier Commc'ns of Am., Inc.*, 2015 VT 67, ¶ 20, 199 Vt. 272). "If the contract 'language is unambiguous, there is no need to consider evidence outside of the writing.' " *Sutton*, 2019 VT 71A, ¶ 64 (quoting *Hemond*, 2015 VT 67, ¶ 20).

Here, the contract is unambiguous, and it neither mentions Waterloo nor indicates that the contract is meant to benefit the owner of the property. While the contract mentions Waterloo's predecessor, Pizzagalli, it does so only to identify the property that is subject to the service agreement. This leaves Waterloo only with the bald assertion that it is a third-party beneficiary. This allegation, however, is insufficient. *See Vitale v. Bellows Falls Union High School*, 2023 VT 15, ¶ 28, 217 Vt. 611 (Court is "not required to accept as true 'conclusory allegations or legal conclusions masquerading as factual conclusions' ") (quoting *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1).

Waterloo's negligence claim fares no better, for different reasons. The pleadings make clear that the losses claimed here are purely economic: Waterloo seeks to recover for the cost of repairing or replacing the boiler systems. This brings the negligence claim squarely within the operation of the "economic loss rule." Vermont has adopted the rule, which prohibits recovery in tort for purely economic losses. *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 314 (2001). Economic losses are generally defined as " 'damages other than physical harm to persons or property.' " *Id.* at 315 (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000)). "[I]njury to the product or property that is the subject of a contract is generally considered disappointed economic expectation for which relief lies in contract rather than tort law." *Walsh v. Cluba*, 2015 VT 2, ¶ 28, 198 Vt. 453. [2] Economic losses may include, but are not limited to, lost profits, claims of inadequate value received, and repair or replacement costs. *See Heath v. Palmer*, 2006 VT 125, ¶ 15, 181 Vt. 545 (affirming that plaintiffs' remedy for construction defect repairs rests in contract rather than tort law); *Gus' Catering, Inc.*, 171 Vt. 556, 558–59 (2000) (mem.) (defining economic loss to include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits") (internal

quotation omitted).

As Waterloo points out, our Supreme Court has recognized a narrow exception to the economic loss rule for cases where the parties have a special relationship independent of any underlying contractual relationship. *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 31, 181 Vt. 513. As the *Springfield Hydroelectric* Court stated:

> [E]ven where courts have permitted recovery for economic loss, they have required a "special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor."

172 Vt. at 316 (quoting *Aikens v. Debow*, 541 S.E.2d 576, 589 (W.Va. 2000)). "The underlying analysis turns on whether there is a 'duty of care *independent* of any contractual obligations.' " *Id*. (quoting *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)) (emphasis in original); *see also Walsh*, 2015 VT 2, ¶ 27 ("The determining factor in deciding whether to apply the economic-loss rule is not whether privity exists but rather whether there is 'a duty separate and apart from a contractual duty.' ") (quoting *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 13 192 Vt. 322).

Whether a "special relationship" exists depends on the "type of relationship created between the parties." *EBWS*, 2007 VT 37, ¶ 31; *see Sutton*, 2019 VT 71A, ¶ 33 (plaintiffs sufficiently alleged special relationship to prevent economic loss doctrine from barring tort claim where defendant initiated close relationship, recruiting plaintiffs to invest life savings in EB-5 project, "by promising exceptional oversight and management of the investment"). In the past, our Court has found it significant whether defendants held "themselves out as providers of any licensed professional services" or "maintained complex and highly specialized responsibilities." *Id.* ¶ 30. The Court has cautioned, though, that while a professional license in a particular field "may be indicative of this [special] relationship, it is not determinative." *Id.* ¶ 31. The Court has also indicated that such relationships usually take the form of "a professional relationship such as doctor-patient or attorney-client . . . such that it 'automatically triggers an independent duty of care that supports a tort action.' " *Walsh*, 2015 VT 2, ¶ 30 (quoting *Town of Alma*, 10 P.3d at 1263). Indeed, the only "special relationship" that the Court has ever found to support an exception to the economic loss rule was in *Sutton*, where the defendant "personally solicited individual investors, and entered into individualized relationships with each plaintiff" and "initiated a close relationship with plaintiffs by recruiting them to invest their life savings in the Jay

Decision on Motion for Judgment on the Pleadings
Page **3** of **4**
24-CV-03392 Waterloo Real Estate Group, LLC v. Country Home Products, Inc. et al

Peak Projects by promising exceptional oversight and management of the investment." 2019 VT 71A, ¶ 33.

A comparison of the allegations in *Sutton* with those here makes clear that this is not a case in which the Court would apply the special relationship exception. Waterloo does not allege any relationship with New England Air.[3] CHP had a contractual relationship with New England Air, and Waterloo had a landlord-tenant relationship with CHP, but Waterloo neither asserts that it had a relationship with New England Air nor otherwise explains the basis for a duty New England Air may have owed it (as opposed to the contractual duty New England Air clearly owed to CHP). Thus, as in *Springfield Hydroelectric*, "[i]n the present case, neither privity of contract, nor a special relationship, exist between [plaintiff] and [defendant] which would permit a finding of duty on the part of [defendant]." 172 Vt. at 316. In short, the economic rule applies to bar Waterloo's negligence claims.

## ORDER

The court grants the motion. All of Waterloo's claims against New England Air are dismissed with prejudice.

Electronically signed pursuant to V.R.E.F. 9(d): 4/29/2025 2:05 PM

_____
Samuel Hoar, Jr.
Superior Court Judge